O'NEILL *v.* QUILLIN ET AL., POLICE RELIEF FUND TRUSTEES.

(Decided February 27, 1939.)

*Messrs. Streicher & Krueger,* for relator.

*Mr. Martin S. Dodd,* director of law, and *Mr. Jas. Slater Gibson,* for respondents.

CARPENTER, J. This is an original action in mandamus. In such actions in Ohio, the proper plaintiff is "The State of Ohio upon the relation of," etc., but in the caption of all of the pleadings in this case, the plaintiff appears as "Ruth A. O'Neill, Relator." She is the widow of a police officer of the city of Toledo, who was killed in the discharge of his official duty, and seeks to compel the defendants, the Trustees of the Police Relief Fund of the city of Toledo, to restore to her the pension of $35 per month granted and paid to her as of the date of his death, November 8, 1936, and discontinued with the March, 1937, payment.

The matter is submitted on an agreed statement of facts, the essential ones being as follows:

The city of Toledo provides under the care of re-

spondents a police relief fund supported entirely by tax money and known as the Police Relief Fund. There is also a Police Relief Sub-Fund made up largely of contributions by members of the police force. Section 4625, General Code.

November 8, 1936, Harvey Lloyd O'Neill, while on duty as a patrolman, was killed, leaving his widow, the relator, and their two minor children under sixteen years of age.

November 30, 1936, the respondents duly ordered paid to her the regular widow's pension of $35 per month and $8 per month for each of the two children.

Prior to March, 1937, relator applied for and received from the Industrial Commission of Ohio an award of $18.75 per week based on the death of her husband, and payments thereunder are still being made.

On being informed of the award by the state, respondents ordered payments to the relator of $35 per month suspended "until such time as the monthly payments of $35 will have amounted to the sum given you by the State Industrial Commission." The payments of $16 per month on account of the children have been continued.

From the Police Relief Sub-Fund, to which Officer O'Neill contributed, relator has been paid the full death benefit of $3,000, and that is not involved in this action.

August 31, 1936, the trustees of the police relief fund duly adopted the following rule, which has been in effect since:

"Rule 14, Section 2; Amendment 8-31-36. In the event that any widow of a deceased member of the division of police is eligible to, and does receive death benefits from the workmen's compensation fund of the state of Ohio, or similar fund, such widow shall not be eligible to receive any pension under these rules for the period of time covered by said workmen's com-

pensation fund, or similar fund, payments. In case the payments under said state workmen's compensation fund, or similar fund, are less than those paid under the police relief fund, then the sum paid under said workmen's compensation law, or similar law, shall be deducted from the amounts payable under the police relief fund rules and regulations, and the difference shall be paid to the widow under the provisions of the police relief fund rules and regulations, but if the payments under the workmen's compensation law, or similar law, are more than those payable under the police relief fund rules and regulations, no sum shall be paid from the police relief fund until the sum or sums that would have been paid from the police relief fund and the sum or sums that have been paid from the workmen's compensation fund are equal. In no instance shall the widow receive a sum or sums from the workmen's compensation fund, or similar fund, either in payments or awards totaling more than she shall receive from the police relief fund. This provision shall in no way affect the payment to children of deceased members under these rules.''

By answer, the respondents plead this rule in justification of their suspension of the relator's pension.

The relator claims that having been granted the pension, her right to it became a vested right, and that the respondents have no power to take it from her.

Section 4628, General Code, provides:

''Such trustees shall make all rules and regulations for distribution of the fund, including the qualifications of those to whom any portion of the fund shall be paid, and the amount thereof * * *.''

In *State, ex rel. Cline,* v. *Miller et al., Trustees,* 134 Ohio St., 445, 17 N. E. (2d), 749, the Supreme Court recently held a rule similar to Rule 14, *supra,* adopted in the city of Columbus, a valid exercise of the power conferred by the statute. As Rule 14, Section 2, was in effect at the time of the death of Officer O'Neill, it

covers the right of relator to a pension (*State, ex rel. Eden,* v. *Kundts et al., Trustees,* 127 Ohio St., 276, 188 N. E., 9), and any right she had to such relief was subject to the rule, and even granting that it was a vested right, it was not an absolute one, but one under the circumstances subject to being suspended as was done by respondents.

Section 4628-1, General Code, by which the granting of a police pension under the rules gives rise to a vested right did not become effective until May 26, 1937, subsequent to the action of respondents in March, 1937, discontinuing relator's pension, hence has no application in this case one way or the other.

While the validity of Rule 14, Section 2, is sustained by *State, ex rel. Cline,* v. *Miller et al., Trustees, supra,* it is appropriate to observe that the manifest purpose of the police relief fund is to secure to dependents of police officers killed in service a minimum monthly pension, and the rule which safeguards the taxpayers from a double burden in such cases is not unreasonable. Both the city police relief fund and the workmen's compensation fund administered by the Industrial Commission of Ohio, are supported by the taxpayers of the city—the former by a direct levy (Section 4621, General Code) and the latter by appropriations to pay the premiums assessed by the commission.

Further supporting the wisdom and reasonableness of this rule from another standpoint, there is a compelling reason why the custodians of the police relief fund should zealously guard it. It is common knowledge to every citizen that in recent years, in Ohio, there has been a marked shrinkage in the source from which this fund is maintained, the direct property tax levy, and during the same time there has been a great increase in the demand on all tax moneys, most of it appealingly humanitarian. It is equally well known that there is no immediate prospect of change in either

of these respects. In the face of this situation, every beneficiary of the Police Relief Fund of the City of Toledo, whether actual or potential, has a direct interest in having it conserved to the end that it may continue to be sufficient to meet at least the minimum standards that have been established in its distribution.

When relator obtained the award from the state, which was more than the pension she received from respondents, under the rule she became ineligible longer to receive such pension, and this ineligibility has continued to this time, and the writ prayed for must be denied.

*Writ denied.*

OVERMYER, J., concurs.
LLOYD, J., not participating.